UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| D. R. THORPE, <br>     Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Commissioner of Social Security <br><br>     Defendant. | Case No. 2:22-CV-013-JD-JEM |

## OPINION AND ORDER

D. R. Thorpe ("Mr. Thorpe") applied for disability insurance benefits, alleging that he is unable to work primarily due to mild neurocognitive disorder, depressive disorder, sensorineural hearing loss, sleep apnea, and "prostate issues." (R. 187). Mr. Thorpe was found to be not disabled in a June 2021 decision. Mr. Thorpe then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Mr. Thorpe then filed his reply. As explained below, the Court affirms the Commissioner's decision.

### I.    Factual Background

Until he stopped working, Mr. Thorpe worked as a dispatcher. (R. 36). Mr. Thorpe suffers from chronic traumatic encephalopathy, mild neurocognitive disorder, alcohol and benzodiazepine abuse, depression, and anxiety. (R. 24). Mr. Thorpe applied for benefits in 2019. He alleges disability starting October 31, 2019. (R. 15). The ALJ issued an unfavorable decision on June 2, 2021. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple instructions and make simple work-related decision. He can tolerate occasional changes in work setting. He can

>tolerate occasional interaction with coworkers, supervisors, and the public. He can tolerate a moderate noise intensity level as defined in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations.

(R. 27). Finding that jobs exist in significant numbers in the national economy that Mr. Thorpe can perform, the ALJ found that he is not disabled. The Appeals Council declined review, and Mr. Thorpe filed this action seeking judicial review of the Commissioner's decision.

## II. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before

affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments

3

meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.   Discussion**

Mr. Thorpe offers five arguments in support of reversal. He argues that the ALJ erred in relying on the VE's testimony at step five, the ALJ failed to account for his obesity in the RFC, the ALJ erred in considering his subjective symptoms, the ALJ failed to include all of his mental limitations in the RFC, and the ALJ failed to properly evaluate the third-party function report from his wife.

**A.  Step Five**

First, Mr. Thorpe argues that the ALJ erred by relying on VE testimony that was not supported by substantial evidence. Mr. Thorpe does not take issue with the VE's numbers specifically; instead, he argues that the ALJ should have questioned the VE as to how she determined the job number approximations. At the hearing, Plaintiff's counsel specifically stated that he had "no objection" to the VE's qualifications. (R. 54). The VE testified twice that her

4

testimony regarding job titles and numbers were consistent with the DOT. (R. 55-56). The VE also stated that her testimony tolerances regarding off-task behavior and absences was based on her professional experience and training, as those issues are not addressed by either the DOT or the SCO. (R. 56). Plaintiff's counsel did not object to the VE's testimony, either the substance or her methods, at the hearing. (R. 54-58).

Mr. Thorpe asserts that he did not need to object at the hearing in order to object to the methodology and job numbers at a later date. However, the Seventh Circuit has held that a claimant who fails to object to a VE's testimony during the hearing forfeits any later challenge to the VE's testimony. *See Coyier v. Saul*, 860 F.App'x 426, 427-28 (7th Cir. 2021) (unpublished) ("Collins forfeited [his challenge to the VE's testimony] by not objecting at the hearing."); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[The claimant] forfeited [her argument regarding the VE's sources] by failing to object to the VE's testimony during the hearing."); *Barret v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004), on reh'g, 368 F.3d 691 (7th Cir. 2004) ("[B]ecause [the claimant's] lawyer did not question the basis for the [VE's] testimony, … any objection to it is forfeited."); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) ("when no one questions the [VE's] foundation or reasoning [at the hearing], and ALJ is entitled to accept the [VE's] conclusion."). Neither Mr. Thorpe nor his counsel objected to the VE's methodology or job numbers at the hearing. Therefore, he has forfeited his argument regarding the VE's testimony.

Mr. Thorpe cites to *Ruenger v. Kijakazi*, 23 F.4th 760 (7th Cir. 2022) to support his assertion that the ALJ was under a burden to question the VE's methodology for determining job numbers. However, the claimant in *Ruenger* objected to the VE's methodology and job numbers at the hearing, and the ALJ accepted the VE's testimony over the objections. *Id.* at 762. Mr.

Thorpe also incorrectly quotes *Ruenger,* stating that the case held that the "ALJ *must* ask the VE to 'explain the methodology behind the[] estimates.'" [DE 15 at 4]., quoting *Ruenger*, 23 F.4th at 762. (emphasis added). However, this quote is explaining how the VE described a two part process "[w]hen the ALJ asked her to explain the methodology behind these estimates." *Ruenger*, 23 F.4th at 762. Mr. Thorpe incorrectly states that *Ruenger* holds that the ALJ must ask the VE to explain methodology, when the quote he used simply explains the VE's process, with no statements regarding the ALJ's obligations. There is no indication that the Seventh Circuit is requiring the ALJ to question the VE on her methodology behind job estimates where the claimant does not object at the hearing.

      Mr. Thorpe also relies on a case in this district which found that an ALJ erred by failing to question the accuracy of job number estimates and instead merely asked if the VE's testimony was consistent with the DOT. *Ian R. v. Kijakazi*, 2022 U.S. Dist. LEXIS 119677, at *11 (N.D. Ind. July 7, 2022). However, there is no information in that case as to whether the claimant objected at the hearing. Moreover, *Ian R.* relied on *Ruenger* to support its findings, and the claimant in *Ruenger* objected to the VE's methodology at the hearing. *Ruenger* clearly states that the "ALJ must compel the vocation expert to offer a 'reasoned and principled explanation' of the methodology she used to produce the [job-number estimate]" only when "the claimant challenges the job-number estimate." *Ruenger*, 23 F.4th at 763, quoting *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018). *Ruenger* also stated that the ALJ "has a duty to spend time inquiring into the expert's methodology" when "a claimant challenges a vocational expert's job-number estimates." *Id. Ruenger* does not support Mr. Thorpe's assertion that the ALJ should have questioned the VE's methodology even though he did not object at the hearing. Mr. Thorpe has failed to provide any case law to support his assertion that the ALJ erred in accepting VE

testimony regarding job-number estimates when the claimant failed to object at the hearing.

Mr. Thorpe also argues that *Donahue*, 279 F.3d 441, does not apply to his case. He asserts that because the VE in *Donahue* provided some basis for her job numbers in her testimony, her testimony was supported by substantial evidence, whereas the VE in his case provided no methodology and therefore failed to support her testimony with substantial evidence. However, *Donahue* held that "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Donahue*, 279 F.3d at 446. This again reiterates the concept that the ALJ is entitled to accept a VE's testimony when there is no objection at the hearing. There is an exception to *Donahue*, and that is when there is an apparent conflict between the VE's testimony and the DOT. SSR 00-4p, 2000 SSR LEXIS 8, at *9, 2000 WL 1898704, at *2-4. If a claimant fails to object to conflicts between the VE's testimony at the time of the hearing, the claimant must show on appeal that the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). However, Mr. Thorpe is not asserting that the VE's testimony is in conflict with the DOT. Instead, he argues that the VE's job-number estimates cannot be supported by substantial evidence because the DOT does not contain job-number estimates. Neither Mr. Thorpe nor his counsel objected to the VE's methodology or job numbers at the hearing. Therefore, he has forfeited his argument regarding the VE's testimony.

**B. Obesity**

Mr. Thorpe next argues that the ALJ failed to consider his obesity in combination with his other impairments. In determining a claimant's RFC, the ALJ must consider any limitations in function caused by obesity. Specifically, SSR 02-1p, 2002 SSR LEXIS 1 requires an ALJ to assess the effect obesity has upon the individual's ability "to perform routine movement and

necessary physical activity within the work environment" because individuals with obesity "may have problems with the ability to sustain a function over time." SSR 02-1p, 2002 SSR LEXIS 1. Failure to explicitly discuss the effects of a claimant's obesity may be harmless error if the ALJ adopts "the limitations suggested by the specialists and reviewing doctors" who were aware of the condition. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006). Failure to explicitly discuss a claimant's obesity is also harmless if the claimant fails to "specify how his obesity further impaired his ability to work." *Skarbek*, 390 F.3d at 504.

The ALJ found Mr. Thorpe's obesity to be non-severe and stated that it would have no more than a minimal effect on his ability to perform basic work activities due to mild findings and lack of consistent treatment. (R. 29). The ALJ noted normal physical findings throughout the RFC discussion. (R. 33-34). Mr. Thorpe argues that the ALJ should have included further limitations to frequent stooping in the RFC due to his obesity. He asserts that he requires a limitation to frequent stooping due to his joint pain and muscle pain.

There is no evidence in the record to support Mr. Thorpe's assertion that he is limited in his ability to stoop. He points to a single treatment record wherein he complained of joint pain, muscle pain, and muscle weakness. (R. 498). However, this record merely repeats Mr. Thorpe's subjective symptoms, and the physical examination findings at this visit were normal. (R. 498-500). Mr. Thorpe does not provide any evidence that he is limited in his ability to stoop due to his obesity. He does not assert that his obesity causes any further limitations, and therefore, any failure by the ALJ to explicitly discuss his obesity is harmless. Although the ALJ did not explicitly discuss his obesity in the RFC discussion, the ALJ discussed his normal physical examinations and noted that they did not require further RFC limitations. (R. 29, 33-34). Mr.

Thorpe has failed to provide any evidence that shows his obesity, in combination with his other impairments, required any further limitations in the RFC.

Mr. Thorpe also asserts that the ALJ erred by failing to consider doctors' opinions who noted Mr. Thorpe's obesity and stated that the opinions could have discussed his obesity in relation to his other impairments. However, Mr. Thorpe declined to say which doctors' opinions the ALJ failed to consider. Instead, Mr. Thorpe speculates that a doctor could have discussed his obesity in combination with his impairments, without providing any evidence that any doctor found his obesity to exacerbate his other impairments. Such speculation does not require remand, as Mr. Thorpe bears the burden of proving his impairments and disability. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

Mr. Thorpe next argues that the ALJ should have limited him to either light or sedentary work due to his reports of pain and his memory problems. Mr. Thorpe does not identify any evidence to support his assertion that his impairments require a restriction to light or sedentary work. He notes multiple impairments and symptoms related to his mental impairments, but he does not identify any evidence to support a restriction to light or sedentary work. He notes two treatment notes where he complained of back pain or muscle and joint pain, but neither treatment note indicates he requires a limitation to light or sedentary work. (R. 493, 498). Those treatment notes simply repeat Mr. Thorpe's subjective symptoms without providing any evidence that he required further limitations to light or sedentary work. Mr. Thorpe is asking the Court to reweigh the evidence and find that the evidence supports a limitation to light or sedentary work, which this Court cannot do.

### C. Third-Party Function Report

Mr. Thorpe also takes issue with the ALJ's finding that his wife's third-party function

report was less persuasive than the opinions of the medical experts. Mr. Thorpe asserts that the ALJ did not find Mrs. Thorpe's report persuasive solely because she is not a medical professional. Although reports from family members can provide helpful evidence about a claimant's functional abilities and limitations on a daily basis, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources" using the requirements of 20 C.F.R. § 404.1520c(a)-(c). 20 C.F.R. § 404.1520c(d). The ALJ found that Mrs. Thorpe's statements were generally corroborative of Mr. Thorpe's subjective symptoms, particularly related to his daily activities, but she found that they were less persuasive than the opinions of the medical experts. (R. 31-32).

Mrs. Thorpe reported that Mr. Thorpe only sporadically does household chores, and that he requires verbal reminders to complete them, and it takes him time to complete them. (R. 210). She reported that he can only pay attention for minutes at a time, and that he is easily irritated and is distrustful of others. (R. 213). However, the ALJ noted that Mr. Thorpe reported to his neurologist that he could manage daily living activities with some limitations. (R. 496). The ALJ also noted that Mr. Thorpe's testing results indicate he has moderate limitations in concentrating, persisting, or maintaining pace. (R. 31). The ALJ did not dismiss Mrs. Thorpe's report solely because she is not a medical professional. The ALJ properly looked to the evidence in the third-party function report but found that her report was not persuasive enough to outweigh the abundance of medical evidence in the record. (R. 31-32). Therefore, remand is not appropriate for this issue.

### D.  Subjective Symptoms

Next, Mr. Thorpe asserts that the ALJ erred in analyzing his subjective symptoms. An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains her

reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of his pain on her ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

      The ALJ found that Mr. Thorpe's statements concerning his subjective symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 28). The ALJ noted that Mr. Thorpe regularly had normal findings in his clinic notes with normal cognition and memory, normal judgment and thoughts, and normal physical exams. (R. 28-29). In a 2019 neuropsychological evaluation, he showed no overt evidence of depression and anxiety, with further visits showing a mild neurocognitive disorder. (R. 29). Mr. Thorpe had normal to mildly limited incidental memory. (R. 29). The ALJ further found that despite alleging he is not social, he was generally found to be pleasant and cooperative. (R. 30). The ALJ also noted that he remains capable of performing a variety of daily activities. (R. 30).

      First, Mr. Thorpe takes issue with the ALJ's finding that his symptoms were "not entirely consistent with the medical and other evidence," arguing that this standard is heightened and improper. (R. 22). However, this boilerplate language is improper "only when the ALJ substitutes it for a full explanation of why credibility is lacking." *Atkins v. Saul*, 814 Fed. Appx. 150, 155 (7th Cir. 2020), *citing Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). If the ALJ provided a full analysis of Mr. Thorpe's subjective symptoms, then there is no error in using this

boilerplate language. The question, then, is whether the ALJ properly considered Mr. Thorpe's subjective symptoms. As discussed below, the ALJ did so here.

Mr. Thorpe asserts that the ALJ should have found his subjective symptoms to be persuasive, as the state agency physicians felt that the objective evidence substantiated his symptoms. However, Mr. Thorpe ignores the fact that the state agency physicians also found that he had no severe impairments. (R. 64-65, 76-78). Had the ALJ adopted the state physician's opinions, Mr. Thorpe's RFC would be less restrictive than the ALJ's determination.

Mr. Thorpe takes issue with the ALJ's discussion of his daily activities, as well as his failure to accept evidence of his sedentary lifestyle. With regard to his sedentary lifestyle, Mr. Thorpe points to a single treatment note where the physician indicated that Mr. Thorpe reported having a mostly sedentary lifestyle. (R. 359). However, the physician did not suggest Mr. Thorpe was only capable of sedentary work or a sedentary lifestyle. He simply noted Mr. Thorpe's own reports of his day-to-day activities. There is no evidence that Mr. Thorpe required a sedentary lifestyle to manage his impairments and symptoms.

Mr. Thorpe further asserts that the ALJ erred by noting he still enjoyed boating, which he argues the ALJ impermissibly used to conclude his subjective symptoms were less limiting than he alleges. However, this is a misstatement of the ALJ's decision. The ALJ did no more than reference Mr. Thorpe's function report, where he indicated that he enjoyed the boat club and boats when he is physically able. (R. 27, 174). This is consistent with the ALJ's finding that Mr. Thorpe is "social on occasion by going to a boat club and fishing." (R. 27). The ALJ did not improperly find that Mr. Thorpe can drive a boat as part of his subjective symptom analysis. The ALJ also did not draw any conclusions from this statement. It was included as part of a description of Mr. Thorpe's statements in his function report, and the ALJ did not use his

enjoyment of boating in any of her analysis.

Mr. Thorpe further asserts that the ALJ failed to properly consider his headaches. Specifically, Mr. Thorpe argues that the ALJ should have considered the duration, frequency, and intensity of his headaches; the effects on his daily activities; and his brain injury related to repetitive head trauma. The ALJ found Mr. Thorpe's headaches to be a non-medically determinable impairment, as there was no objective medical evidence from an acceptable medical source to support his allegations. (R. 25).

In order to establish that his headaches are a medically determinable impairment, Mr. Thorpe needed to provide evidence that his headaches were established by "objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. A statement of symptoms or a diagnosis is not sufficient to establish the existence of an impairment. *Id.* Mr. Thorpe bears the burden of proving his impairments. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). In determining the RFC, the ALJ must consider all medically determinable impairments, both physical and mental. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). However, the ALJ does not consider non-medically determinable impairments when determining the RFC. SSR 96-8P, 1996 SSR LEXIS 5. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.*

Mr. Thorpe has provided no medical evidence to support his allegations that his headaches required consideration in the RFC. He does not allege that the ALJ erred in finding it a non-medically determinable impairment. He alleges that the ALJ erred in considering his subjective statements regarding his headaches in the RFC determination. However, the ALJ is not required to consider the symptoms from his headaches when she found his headaches to be a

non-medically determinable impairment. Mr. Thorpe has provided no evidence that his headaches required treatment or that his physicians were even aware of his headaches. He regularly reported that he did not have headaches to his physicians. (R. 307, 407, 414, 422, 432). He only reported headaches to his neurologist at two appointments in February and March 2021, but his neurologist did not list them as current symptoms or problems, nor did he prescribe any medication for his headaches. (R. 493, 497).

    Mr. Thorpe further asserts that the ALJ erred by failing to consider objective medical testing showing a brain injury related to "repetitive head trauma" in considering his headaches. While a March 2021 MRI did show "[b]ilateral cortical based encephalomalacia in the frontal lobe … consistent with the given history of repetitive head trauma," there is no evidence that headaches either prompted the MRI or resulted from the repetitive head trauma. (R. 503). On the contrary, the MRI specifically is looking for evidence of chronic traumatic encephalopathy, major depression disorder, balance struggles, sleep apnea/COPD, and a history of multiple head injuries. (R. 501-02). There is no evidence that he required treatment for headaches or that any medical professional requested imaging or testing related to headaches. Mr. Thorpe asserts that the ALJ improperly relied on the MRI evidence, but he fails to provide evidence that the MRI evidence is related to his headaches. Mr. Thorpe also asserts that the ALJ should have submitted this MRI, along with a second MRI from April 2021, to medical experts, and that failure to do so requires remand. As an initial matter, the April 2021 MRI only indicates that there was no evidence of abnormal parenchymal or meningeal enhancement. (R. 500-01). The March 2021 MRI showed mostly normal findings outside of finding consistent with his already existing diagnosis of chronic traumatic encephalopathy and his history of head trauma. Mr. Thorpe has offered no evidence or assertions that the MRI's in question would have required further

limitations or altered any reviewing physician's opinion.

### E. Mental Impairments

Finally, Mr. Thorpe asserts that the ALJ failed to include all his mental limitations in the RFC and subsequent hypothetical to the VE. He argues that the ALJ should have relied on his subjective complaints to physicians and nurses to conclude that he struggled with memory problems and an inability to concentrate. He does not, however, provide any evidence to support that he requires further limitations related to his mental impairments. Mr. Thorpe cites to treatment notes from Dr. McClure which repeat his subjective statements related to confusion, pain, weakness, and depression. (R. at 493). Mr. Thorpe fails to acknowledge that Dr. McClure also found his memory and cognition to be normal. (R. 410, 414). Consultative examiner Dr. Rini found that Mr. Thorpe had a normal mental status exam outside of a flat affect. (R. 358-59). He ultimately found that Mr. Thorpe has average attention, concentration, and memory, but his social functioning is below average. *Id.* Mr. Thorpe's treating neurologist, Dr. Cristea, found that he has normal memory with normal attention and concentration, although he has a slight impairment in speech and slowness in delivery of thought. (R. 420-22). Mr. Thorpe has not provided any evidence or medical opinion evidence that he requires further limitations than the ones provided in the RFC.

Moreover, the ALJ properly supported her RFC determination with substantial evidence. The ALJ limited Mr. Thorpe to simple instructions and simple work-related decisions with occasional changes in the work setting. (R. 32). The ALJ supported this by noting his standardized testing, history of repetitive head trauma, and his substance use were consistent with these limitations. *Id.* The ALJ also noted normal mental status examinations and his ability to perform a variety of daily living activities. *Id.* The ALJ then limited Mr. Thorpe to occasional

interaction with coworkers, supervisors, and the public, noting that he attended therapy for anger issues and occasionally presented as irritable. *Id.* Mr. Thorpe provides no evidence that he required further limitations, and the ALJ properly supported her findings with substantial evidence.

The ALJ properly supported her decision with substantial evidence. The decision of the ALJ is affirmed.

## CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 28, 2023

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court