UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DONALD R. THORPE,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Case No. 2:22-CV-13 JD

## **OPINON AND ORDER**

Now before the Court is the plaintiff, Donald Thorpe's, motion for the Court to alter its prior judgement pursuant to Federal Rule of Civil Procedure 59(e). (DE 18.) For the following reasons this motion will be denied.

**A. Background**

Mr. Thorpe previously appealed an adverse decision of the Commissioner of Social Security, acting through an Administrative Law Judge ("ALJ"), to this Court pursuant to statute. (DE 1.) The Court issued a decision affirming the Commissioner. (DE 16.) One of the issues presented during that appeal related to Step Five of the Social Security Administration's process for determining disability. Specifically, during the hearing before the ALJ an impartial vocational examiner ("VE") testified that there were an estimated 145,000 jobs in the national economy which Mr. Thorpe could perform given the limitations articulated by the ALJ. Mr. Thorpe's counsel had stipulated that the VE was qualified as an expert based on her resume. (A.R. at 53–54.) Mr. Thorpe's counsel did not object to the VE's conclusion on the number of jobs at that time. Nor did counsel seek further elaboration on the VE's methodology for that

conclusion during cross-examination. Mr. Thorpe's counsel only asked two questions of the VE on cross-examination. Both were variations of the hypothetical presented by the ALJ, relative to the RFC, and asking the VE if there would be work in the national economy for those revised hypotheticals. (A.R. at 56–57.)

On appeal to this Court, Mr. Thorpe acknowledged that he had not challenged the reliability of the VE's methodology during the administrative hearing but argued he could nonetheless raise such an argument for the first time on appeal. The Court disagreed and found that under governing Seventh Circuit and Supreme Court caselaw he had forfeited the issue by not raising it before the ALJ. (DE 16 at 4–7.) In his motion Mr. Thorpe alleges the Court misapplied the controlling precedent, should reconsider the issue of forfeiture, and reverse its prior decision.

**B. Legal Standard**

Although motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit consider such motions under the standards set forth in Rule 59(e) or Rule 60(b). *Bell v. Turner*, No. 1:15-cv-00931, 2017 WL 2021404, at *1 (S.D. Ind. May 12, 2017). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted).

Relief pursuant to a Rule 59(e) motion is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). "[S]uch motions are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal quotation marks and citation omitted).

**C. Discussion**

The issue before the Court is a narrow one. Can Mr. Thorpe forfeit a challenge to the VE's methodology estimating the number of jobs available to the plaintiff in the national economy by not raising the issue before the ALJ?[1] The answer is yes. As such, given our facts, the Court will deny the motion.

Mr. Thorpe's argument in favor of reconsideration is that the Court misapplied the law in finding that he could forfeit a challenge to the VE's testimony on the number of jobs available. Specifically, he argues that the Court "[in creating a] rule requiring the need to object in order to preserve the issue of substantial evidence at Step 5 misreads the holding in *Biestek v. Berryhill*, 139 S.Ct. 1148, 1155 (April 1, 2019)." (DE 18 at 1.) (*Biestek* noting that a claimant "cannot waive the substantial evidence standard") Mr. Thorpe then goes on to extensively argue why the ALJ's decision was not supported by substantial evidence. But this issue is only relevant if Mr.

---

[1] Mr. Thorpe's argument is purely a legal one; that the argument cannot be forfeited and he does not dispute the fact he did not previously raise the issue before the ALJ.

3

Thorpe is correct about the legal error. He provides little analysis of the holdings in *Leisgang* or *Fetting*.[2]

Mr. Thorpe's reading of the law is incorrect. The Seventh Circuit has unambiguously held that the doctrine of forfeiture generally applies to Social Security proceedings. *Leisgang v. Kijakazi*, 72 F.4th 216, 219–20 (7th Cir. 2023) (collecting cases). This includes arguments relating to the reliability of the VE's testimony at Step Five. *Id.* The onus is on the claimant to object or otherwise indicate at the administrative proceeding, even by the nature of questions asked, that the VE's methodology is unreliable. *Id.* (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023)). This must be done with sufficient specificity. *Id.* "General objections or vague questions about the VE's methodology are, without more, insufficient." *Id.*

With all that being said, the *Leisgang* court took care to note this rule does not displace several other existing rules. Namely, that the ALJ has a duty at Step Five to hold the VE to account for the reliability of her job-number estimates. *Id.* at 220. Additionally, the claimant generally cannot waive the substantial evidence standard. *Id.* (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1155 (2019)).

Some may perceive a tension between these propositions and the holding of *Leisgang*. On the one hand, the claimant can forfeit an argument about the VE methodology by not presenting it before the ALJ. On the other hand, the burden at Step Five rests with the Commissioner and the ALJ has certain obligations to develop the record and resolve apparent inconsistencies. *Leisgang* reconciles these tensions by summarizing the rule. The court stated that forfeiture, in

---

[2] The Court did not have the benefit of these two cases at the time of its original decision. As both parties in briefing the motion have acknowledged them and the cases provide useful guidance, the Court will apply them now.

this specific context[3], means that a claimant "may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record." *Id.* However, the court noted, this rule does not allow the ALJ to accept testimony from a VE that is "facially implausible or incoherent." *Id.* (citing *Brace v. Saul*, 970 F.3d 818, 822–23 (7th Cir. 2020) (find the VE's testimony so convoluted that it was incoherent)). In other words, there needs to be a sufficient basis to conclude the ALJ could put "some 'modicum of confidence'" in the VE's job number estimates. *Id.* (citing *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018)).

The Court's understanding of this holding is that forfeiture, in the context of Step Five of a Social Security proceeding, is somewhat more limited than forfeiture generally. I.e., forfeiture in this context is something more than the mere failure to formally object. Based upon the holding of *Leisgang*, it is a failure to raise an issue, directly or indirectly[4], with sufficient specificity when there is a basis for the ALJ to place a "modicum of confidence" in the VE's testimony. If there is not a sufficient basis for the ALJ to place such confidence in the VE's testimony then, regardless of whether an objection was raised, the Court is obligated to find the ALJ's decision is not supported by substantial evidence.

Mr. Thorpe does not address this issue whatsoever, providing very limited reference to either *Leisgang* or *Fetting*. He does not argue that he objected or otherwise indicated there was

---

[3] The Circuit has carefully noted the unique circumstances of the Social Security proceedings. "ALJs are tasked with resolving a large volume of cases, most of which are accompanied by lengthy, factually complex record." *Leisgang*, 72 F.4th at 220. The ALJs play a significant role in developing the facts, including whether to seek assistance from a VE, which makes the ALJ best suited to "unpack and untangle objections" to the VE's methodology in the first instance. *Id.* Likewise, the ALJ is best suited to do so when the claimant identifies those objections and concerns expressly, allowing for properly development of the evidentiary record. *Id.* All this is to say, at least in the Court's view, judges should take care before heaping additional responsibilities upon the ALJs or requiring they predict potential appellate arguments and issue rulings on questions not raised before them by a party.

[4] *See Leisgang*, 72 F.4th at 219–20 ("a claimant must *object* to the VE's testimony *or otherwise indicate* that the testimony is unreliable.") (emphasis added).

an issue with the reliability of the VE's testimony during the administrative proceeding. Further, there is no colorable argument that the VE's testimony in this case was incoherent.[5] As such, the question becomes whether the testimony, by virtue of its brevity alone, can be considered facially implausible and require remand. The Court finds the answer is no.

The Court finds there are three indicia of reliability which allowed the ALJ to appropriately place at least a modicum of confidence in the VE's job number testimony. The starting point for this analysis is the VE's qualifications. As is customary, the VE submitted a resume which the ALJ and Mr. Thorpe were able to review. Mr. Thorpe's counsel then stipulated to the VE's qualifications to testify. (A.R. at 53–54.) This is the first indicia that the ALJ could confidently rely upon the VE's testimony. The parties agreed the VE was an individual who through their education and experience had specialized knowledge which would be useful to resolving the issues at the hearing.

The second indicia is that the VE confirmed her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). After the ALJ presented the first hypothetical based on the RFC to the VE, the VE provided an estimate of available positions and the ALJ asked the VE to confirm that her testimony was consistent with the DOT. (A.R. at 55.) The VE confirmed that her testimony was. (*Id.*) The Court recognizes the limited value of the DOT, as it only indicates qualifications for positions and not the number of such jobs in the national economy. *Chavez*, 895 F.3d at 965. Nonetheless, this suggests the VE was grounding her conclusions in reference to materials approved by the Social Security Administration. *See id.* (noting use of the DOT is considered a source of reliable job information in SSA regulations). The third indicia is

---

[5] Comparing this case to the facts of *Brace v. Saul*, where the Circuit found the VE's testimony to be incoherent makes this conclusion apparent. 970 F.3d at 822–23. The VE in *Brace* provided extensive, but incoherent, commentary on their purported methodology. That is clearly very distinct from the instant facts.

that the VE utilized her experience and training in formulating her testimony. In response to a question by the ALJ involving employer tolerances for off-task employees, the VE testified that neither the DOT or its companion publications provided answers, but she was able to answer the question based on her training and experience. (A.R. at 56.)

While thin, nothing in this suggests that the VE's methodology was incoherent or implausible. It created a reasonable basis for the ALJ to place confidence in the VE's testimony. The VE was qualified to opine on the questions she was being asked, she indicated that her testimony was consistent with the DOT, and her testimony was also grounded in her training and professional experience. These facts suggest that the VE was not creating her job number estimates out of whole cloth. Further, there is nothing facially implausible about an expert estimating an answer based upon their training and experience, and commonly used reference materials. The ALJ thus had grounds to accept her unchallenged testimony and rely on it in reaching her decision on Mr. Thorpe's claim. *See also Coyier v. Saul*, 860 Fed.Appx. 426, 428 (7th Cir. 2021) (unpublished) (noting the ALJ was entitled to accept testimony of a VE which was uncontradicted and "otherwise proper.").

Undoubtedly, the VE's testimony could have been more detailed and informative. But the standard is not whether the testimony is ideal or could have been better. It is whether there was enough to give the ALJ a "modicum of confidence" in the estimate. The VE's qualifications and reliance upon her experience in rendering the opinion is sufficient for these purposes. Nothing about Mr. Thorpe's cross examination calls this decision into question. Mr. Thorpe's counsel posed two questions to the VE on cross-examination. Each question focused on the RFC and adjusted the characteristics of the ALJ's hypothetical claimant, asking the VE if there would be any work available for the revised hypothetical person. (A.R. at 56–57.) The VE indicated that

there would be no available work for those hypothetical persons. (*Id.*) Mr. Thorpe's counsel did not ask the VE any questions about her methodology, her experience, or her training. There is nothing Mr. Thorpe's counsel said on the record which could be interpreted as an objection, or other indication, of a challenge to the reliability of the VE's testimony. Mr. Thorpe's counsel offered even less than the counsel in *Leisgang*, where the ALJ decision was ultimately affirmed. In *Leisgang* the claimant asked a single question about the VE's methodology, and the VE expressly stated that he was relying upon the equal distribution method; a method subject to recurring criticism to estimate job numbers. 72 F.4th at 219.

Ultimately, the Court did not misapply governing precedent as it was appropriate to assess whether Mr. Thorpe had forfeited his challenge to the VE's job number testimony. Further, Mr. Thorpe's lack of objection before the ALJ and the fact there is a basis for the ALJ to place at least a modicum of confidence in the VE's job number testimony, means the Court will reaffirm that Mr. Thorpe forfeited his challenge to that testimony.

### D. Conclusion

Accordingly, the motion for reconsideration is DENIED. (DE 18.)

SO ORDERED.

ENTERED: May 14, 2024

                                                               /s/ JON E. DEGUILIO
                                                              Judge
                                                              United States District Court